The first case on the call is Agenda 1, Case 122-100, People v. Lesley. Counsel, are you ready? You may proceed. Good morning. May it please the Court? I'm Assistant Attorney General Kevin Dorshoff. This Court, the University of Colorado Courts of Justice, has held a petitioner, Marlon Lesley, waived his statutory right to post-conviction counsel while he is in conduct. Now, there are three different ways that the appellate court is recognized. Courts of other jurisdictions recognize that a defendant can lose his right to counsel. The person is very familiar to the Court. It's a waiver, an affirmative relinquishment of a known right. The Supreme Court Rule 401 requires that when it's a waiver, the right to counsel is trial-certified and monitored to be made in court and transcribed as a corrector. The other side of that, sort of the flip side of the affirmative waiver, is a forfeiture situation where no warning is required. Instead, it's a situation where the defendant's conduct is so unforeseeable and so egregious, such as a typical example is picking up a chair and cracking it over top of his head. That's it, you've lost your right to counsel. You know, what we're talking about here today, a waiver by conduct, is sort of a hybrid situation. There must be a warning that if you do that again, you won't lose your right to counsel. Can I ask just a basic question? Sure. Where in the record can we find language from the trial judge that he was denying right to counsel as a sanction for misconduct? Misconduct in the sense that, I have to back up and explain it. Misconduct in the sense that it was required to commit a waiver by conduct but it may not be misconduct like cursing at your counsel if the defendant did. It just needs to be conduct that's inconsistent with your willingness to work with counsel. Do you believe that somewhere here the court was imposing a sanction? Yes. Where does it say that? I'm sorry. At some point I'm sure we'll look at it. Absolutely find out. So at the open word hearing, that's when they began, and it was sort of tested with jackals and they talked about, he doesn't want me, he won't let me do anything on the case, I'm trying to show him some things, I'm trying to show that we don't have strong legal issues that are really going to help him, I'm going to shift these claims into something that perhaps could survive second stage review, and he tore the papers out of my hands. And the court says, well, you have to, I can't give you another public defender. I cannot. I can lie and hire somebody. She said it twice. I can't give you another public defender. I can lie and hire somebody. And that's when he says, I don't want Mr. Kamersky. I don't want him. I want to hire him. So misconduct in the sense there, it's not that he's punching Mr. Kamersky, but he's expressing his continued dissatisfaction with Mr. Kamersky, refusing to work with him at all. Did the trial judge ever place Mr. Leslie on notice that he could waive his right to counsel? And if so, where do we find that in the record? Absolutely. In the very first appearance, the post-conviction petition was filed in October, and he appeared to counsel in November. And on page 137 in the record, the court said, look, if you're not going to listen to the public defender, that's after they had, you know, this was the cap and leading person, the public defender included. He said, look, if you're not going to listen to him, you have to tell me you're going to go for a stay, or if you want to hire somebody, you can do that. She laid out those options. The trial judge did at the very first hearing. But doesn't Supreme Court Rule 401 delineate four things that the trial judge is supposed to do to place the defendant on notice? Yes, it does, but it doesn't apply here, because the appellate court has held that Rule 401A doesn't apply to post-conviction situations by a varied terms, because it starts out with language saying, whenever an accused statement, whenever someone stands accused of offense. Plus, they've also said, people versus him, the appellate court has said, well, by that time he already knows what the charges are. He's been convicted of the charges. So is your position the defendant is not supposed to receive any notice? That he could waive his right to counsel? No, our position is he is supposed to receive notice. So what notice is he supposed to receive? Two sorts of notice. I guess that's where it gets confused. Notice is basically putting him on notice that, look, if you're not going to go on with your term, then you can hire somebody to go pro se. That's the sort of warning. I like to think of that as the warning. It's not required in a forfeiture situation. But like a waiver situation, like a true waiver situation, unlike a forfeiture situation, the waiver also has to be knowing. There has to be some kind of warning. He has to have some understanding of what rights he's giving up by going pro se. And I think those are the sorts of warnings you're getting at. Is that correct? Well, you're saying that based on your analysis of what occurred, he received all the notice he was entitled to. Kind of like his due process, right, being informed as to what might occur if he acts in a certain way. Right. Well, if we're looking at Rule 401, the only 401 admonishment that would really apply here is the fact that he had a right to an attorney. He did know that. He did know that he had a right to appoint a counsel. Because the trial judge told him? She told him at the very first appearance, before he even had counsel. He appeared on October 31st, and just with the prosecutor and the judge informed him that the stated final motion is dismissed, and he could go and he could represent himself pro se where she would appoint counsel. And he elected to have counsel appointed for him at first appearance. So you're asking us to say that forfeiture applies here because this is the most severe case of misconduct. The fact that he grabbed papers from this attorney and repeatedly attacking defense counsel verbally. So that's severe enough to be forfeiture. Is that what you're saying? I'm saying it is severe enough to be forfeiture. I don't think forfeiture actually, if put to the test, pushed him to shove, I would say this wasn't a forfeiture. I think that the court could have found a forfeiture in that instance, but she seemed to go on. In my mind, if she was going to find that he had forfeited conduct, it would have happened right then and there. She would have said, that's it, Mr. Leslie. You're done. Now you're going pro se, or you can hire somebody. But that's not what happened. This seems to fit much more closely to a waiver by conduct situation where he's been warned about the consequences of not getting along with his attorney. And then he continues to disagree and refuse to work with his attorney. They want to make certain amendments, but he doesn't want them to have anything to do with it. He won't listen to the law. Counsel, is it your position that forfeiture at a post-conviction petition requires a lesser showing of justification than it would be forfeiture of counsel at trial? Yes, that would be our position. Where is that gleaned from? Gleaned from U.S. Supreme Court precedent talking about forfeiture of the Right to Counsel Act. So trial is the main event. And all the precedent on forfeiture at trial level, I think a much stronger showing, much more egregious miscounsel has to occur before we're going to take away somebody's right to counsel at trial. So maybe some lesser showing, some lesser misconduct, but also justified taking away, say, a post-trial motion or a sentence. But since trial is the main event, where your liberty is at stake, that's where you have to have the most egregious showing. And so by analogy to that, post-conviction is even that much further removed where there's no constitutional right to counsel. And it's not that it's not unimportant, it's just that a lesser showing would satisfy. Counsel, are there any cases from either us or from the U.S. Supreme Court that discuss forfeiture by conduct? No, that's unable to find. And certainly the appellate court, our appellate court routinely applies this sort of tripartite scheme. And I was unable to find any cases from this court. Many courts from the Federal Circuit apply this kind of scheme. They've been fined for many years. People via Ames? I'm sorry. I was just going to ask you, is there any case that you can cite that's closest to this circumstance? The appellate court did rely on the Ames case, yes. Probably the closest. But actually I think the closest case, not from Illinois, is the Pittman case that was cited in our brief, from the Sixth Circuit. So in that case where Mr. Pittman's fourth attorney moved his sister out, the court said no. And he lodged a defendant that looked. You have a right to appoint a counsel, but that doesn't mean you get to choose. So the Sixth Circuit noted that at that point the stakes were clear. The defendant was unnoticed, that he could get along with his counsel, he could hire somebody 40 years ago for a state. And then Pittman, the defendant in this case, just kept expressing dissatisfaction, and not necessarily misconduct, physical misconduct, or cursing at the attorney, just refusing to work with him. The Sixth Circuit said that by that point he forfeited, or he waived his right to counsel by his conduct. Because you're given a choice of three things. If you reject number one, which is counsel, appoint a counsel, and you can't or don't retain private counsel, then you're left with number three. It's more a matter of logic than anything else. The same thing happened here, just like in Pittman. He was given the choice of a public defender. In fact, he had two public defenders. He couldn't get along with either of them. Absolutely nothing in the records showed that he ever wanted anything to do with them or wanted their assistance on a case. He believed that he knew the law, and he wanted his petition argued as he had written it. He's a noted public defender by either. The record's not entirely clear, but I think he couldn't retain counsel because he couldn't afford it. And so there he was proceeding pro se, almost left him. And just as Neville was talking earlier, the appellate court was wrong, in a way. It found he wasn't adequately warned. It certainly placed him in a position to lose his right to afforded counsel if he couldn't get along. But as I mentioned at the very first proceeding, he was warned, get along, hire somebody, go pro se. But I think he was given another defender. In February, the court told him again, you had several attorneys from the PD and you don't get your choice. In the appellate court's opinion, second to the last paragraph, it says, while the trial court has discretion to determine whether the severity of a defendant's misconduct requires forfeiture under these facts, a warning would have been the appropriate remedy. Are we here to determine whether the misconduct required forfeiture, or are we here to determine whether a warning, no matter what the conduct of the defendant is, a warning is required? Weaver by conduct and forfeiture, they can be muddy areas. There's something of a sliding scale, right? So typically the court says the conduct is not so egregious that a warning is required. So I guess what we're saying now is that the court could have found forfeiture, but didn't. Instead, after that misbehavior, after he was cursing at the attorney and tearing the papers out of his hand, warned him that if he can't get along, I don't have another public defender, that was the warning, and after that he still continued to persist in his refusal to work with counsel, and that justified or constituted the waiver by conduct. Did that answer your question? So the appellate justice really got it right, and he said, look, it was appearance in February. Anybody in the courtroom that this defendant had good choices, get along, hire somebody, or go for a say. I think I touched frequently also that the waiver by conduct, as I said, also requires that the waiver be knowing and intelligent, but what kind of, you know, a waiver isn't knowing and intelligent. There is no script to give, as the court knows. We have wrote 401A, which provides guidance to trial judges, but there is no constitutional script, even the Sixth Amendment says. Iowa versus Tovar says, an information the defendant needs to know to waive counsel depends on the facts and circumstances of any given case. And a waiver's knowing if the defendant is sort of aware of the usefulness of counsel generally and the dangers of proceeding for a say. And this defendant was. The court told him at least three occasions, and once from the very beginning, here's how it's going to work, Mr. Leslie. We're going to have a hearing. The state's filed a motion to dismiss. Now, if you win the motion to dismiss, it doesn't mean you win your case. If you win the motion to dismiss, you can't appeal. If you win the motion to dismiss, then we're going to have a hearing at which your attorney can present evidence. He said he understands all that. He knew what his counsel would do for him. He knew that his counsel was going to get the transcripts of the guilty plea and review them, and he knew that both of the attorneys had wanted to make amendments to the pro se petition to hear what they thought were defects in the pro se pleadings. This record just shows that the waiver was knowing and the conduct that establishes a waiver might not. Thank you. Appley. Good morning. May it please the Court. My name is Tiffany Boyd-Green, and I represent Myron Leslie, the Appley, in this case. The disagreements that happened in this case did not rise anywhere near the level of forfeiture that would dispense with the requirement for a warning, and the State doesn't seem to argue that this was a forfeiture situation. And what Ames and Goldberg have held is that if there is no immediate danger or threat to counsel, if this conduct is somewhere less than forfeiture, a judge should issue a warning that if the misconduct continues, a defendant will lose his right to counsel. And that's what we never heard in this case. We never heard, Mr. Leslie, you will lose the right to appointed counsel if this continues. There was no warning on November 21, 2013. That was the court appearance where Mr. Cavallini appeared and represented Mr. Leslie, and they had an argument or a disagreement. Ms. Green, do those exact words have to be used? Didn't the court and the judge in this situation say that if you persist in the behavior that you've exhibited on every court date, the court would not appoint another attorney and he'd have to get his own or proceed pro se? So is it your position that the judge had to say you will not have an attorney in this case? Correct, it is. Because the whole point of a warning is that a defendant knows what he stands to lose. If there's any more misconduct or disagreements, he didn't understand that. Didn't he say, I mean, I'm going back to where this misconduct comes from. So in February, the defendant says the public defender was fired and he wanted to hire his own lawyer. And the court continued the case. The defendant indicated that he wanted to hire his own attorney. The court gave him 60 days to do so. And then in April, a few months later, the public defender again said that he'd tried to discuss the case with the defendant and he didn't want to talk to me and so the court gave him more time to hire his own lawyer. In June, the defendant had not hired his own lawyer. The court said, now, it's my understanding that you still want to proceed pro se. I'm going to have to. Why are you going to have to? And then they go into this conflict. But again, where is this sense of misconduct? He's saying, I don't want the public defender. I can't afford a lawyer. And the judge is saying, the only other choice is pro se. What do you want? Where is this sense of misconduct and sanction? Let me put it a different way. What should the judge have done when the defendant said, I don't want the public defender and I can't hire a lawyer? What should the judge have done? He actually, in June, said, I do want the public defender. And he believed he still had that right because when the disagreement happened in February, the trial court kept the public defender appointed. And when Mr. Leslie did not have enough money to hire an attorney, he realized that and showed up in June. He asked Mr. Primarsek, will you please help me with this? He asked him three times for help with this post-conviction proceeding. He was perfectly willing to accept the services of the public defender, which, as the appellate court majority found, he believed he was entitled to because the court had kept the public defender appointed on his case saying, we'll see what happens with his counsel. We'll see if he can hire counsel. You're still in the case. We'll see if he can hire counsel. And when he wasn't able to do that, Mr. Leslie understandably appeared in court in June asking for the services of the public defender. He disputed the fact that the defendant fought with and refused to cooperate with his appointed counsel at every court date? He didn't disagree with and refuse to cooperate on every court date. When he appeared in November, there was the issue with the transcripts. Mr. Leslie believed he could get the transcripts. His attorney wanted to get them. The trial court said, Mr. Leslie, it's easier for your trial attorney to get them. And that was it. The issue was resolved. There wasn't a problem. And when they appeared in December, at that point Mr. Komarsik was representing Mr. Leslie. There was absolutely no disagreements. He appeared on January 9, 2014, and at that point Mr. Cappellini was representing him. There was no misconduct. At that point, Mr. Cappellini said, I've reviewed plea counsel's file. I'm going to get something down on paper. I'll be here at the next court date. And then Mr. Komarsik actually came in at the next court date. So he didn't disagree and refuse to cooperate at every hearing. The only time that there was really any disagreement was about the transcripts in that November date. Didn't he say at one time, Merrick, whatever his name is, is fired? He did say that. Merrick is fired. He wanted to hire his own attorney. That's correct. Yes, he did say that. And the trial court said, okay, I'll give you a chance to do that. Mr. Komarsik is still on the case. We'll see what happens with counsel. So the point of all of this is that the defendant has to understand what is going on. Even in Pittman, which the state mentioned is most on point, in that case the defendant was told you don't have the right to choose your attorney. He went through four separate attorneys. But didn't the judge tell that to him here? He did. That you don't have a right to choose the public defender? Yes, and that is absolutely correct. However, the difference between Pittman and Mr. Leslie's case is that Mr. Leslie was willing to accept the services of Mr. Komarsik. When he wasn't able to hire an attorney and he came in June, he wanted his help. He asked him. He was willing to cooperate. And that would have been the perfect chance for the trial court to say, okay, Mr. Leslie, I see that you're wanting to work with the public defender. If you have any more outbursts or any more disagreements, you will lose the right to appoint a counsel. And you will be on your own if you can't hire someone. What Goldberg and Ames say and what the appellate court found in Leslie was that the defendant has to know what's at stake. So then if there is any more misconduct or disagreements, he's understood that he's lost the right to counsel or appoint counsel. Do we review this de novo or is this an abuse of discretion standard? It's a de novo review is the standard. That's what was applied in Goldberg. And they did take note in Goldberg that the trial court had made some factual findings. In this case, there really weren't, but still it continued in Goldberg to apply a de novo standard. In this case, there actually were no factual findings by the trial court. It somewhat disputed what happened here. The defense attorney said that he lunged at me and Mr. Leslie disputed that. So this court should apply a de novo standard of review to what happened. But even under an abuse of discretion standard, which isn't the traditional standard applied to forfeiture or waiver by conduct cases, Mr. Leslie would still prevail because it was an abuse of discretion for the trial court. Why isn't what happened at the February 2014 status? Why wasn't that enough to compel the judge to do what he did? Because there was no warning that he could lose the right to counsel. All she said was, I can't give you a different public defender. She never said, this public defender is no longer available to you. She said, I'm keeping him on the case to see if you are able to hire counsel. That's not notice that he stands to lose the right if there's further misconduct. And there was no misconduct after that case, after that date. That was a February date. And when he showed up in April. And at that date, right, the defendant told Kaczmarek he was fired and the defendant wanted to hire his own lawyer. And then he grabbed papers out of Kaczmarek's hands while yelling obscenities. That's correct. And then Kaczmarek told the court it was clear he didn't wish to continue with Kaczmarek as his lawyer. But going to discretion, Kaczmarek would leave it to the court's discretion as to what should take place next. And that's when he told him, you have three choices, right? She never said you have three choices. She said, okay, you want to hire an attorney? That's fine. What the trial court needs to say, at that point she should have said, okay, Mr. Leslie, I understand you want to hire an attorney. That behavior was not so egregious to forfeit the right to counsel right there. Is it inappropriate? Sure. But that's exactly this gray area that the state was talking about and courts have recognized where you need a warning. There was no warning prior to that. In order to comply with Goldberg and Ames, there would have needed to be something prior to February when that misconduct occurred, and there wasn't. He had no idea that he was standing to lose the right of the services of the public defender. And she certainly did nothing to clear that up by keeping the public defender appointed. The public defender wasn't clear what his role was, and she said, I'm keeping you on the case. We're going to see what happens. So there's no notice. The whole point of Goldberg and Ames and what the appellate court found in Leslie is that a defendant has to understand what's going on. And here this defendant was very confused. The public defender was confused about what was going on. There was no clear warning. The trial court's comments were very ambiguous, and we need clarity before we can take away a defendant's right to counsel. In the February hearing, he didn't take away the right to the lawyer. He gave the defendant 60 days to get a lawyer, right? After he couldn't get along, as the judge is looking at it, couldn't get along with two public defenders already. He had no issue with Mr. Cappellini after that first date. Once that issue was resolved, it was fine. They appeared in court in January, and it was fine. He said, I'm going to look. I looked at plea counsel's file. I'm going to get something down there. He wasn't unwilling to proceed with Mr. Cappellini at any point. The only reason why Mr. Kumarsic showed up in February was something administrative. It wasn't because he couldn't get along with Mr. Cappellini. In April, the lawyer told the court that he was 100% absolutely clear from a conversation that the defendant wants absolutely nothing to do with me in this case. Was the defendant present for that disclosure to the court? The defendant was, and he was trying to find an attorney. That may have been what he was wanting to do, but he wasn't able to because he didn't have enough money. He believed he still had the right to the public defender. If the court had said to him beforehand, you either cooperate with the public defender now, or you've lost the right to appoint a counsel, then fine. But there was no warning in this case that he would lose the right to appoint a counsel. That's really what Goldberg and Ames and the appellate court in Leslie found, and that's correct. As the appellate court recognized in Ames, they said, public defenders and lawyers are going to fight. Attorneys appointed to represent indigent defendants in criminal cases will rarely find their citizens mistaken for Rotary Club members or other leading citizens of the community. Instead, their clients are frequently angry, ignorant, suspicious, and personally abusive towards their court-appointed counsel, such is the reality of the criminal justice system. So the fact that he had one very minor disagreement in November with Mr. Cappellini, which the trial court easily resolved, certainly does not constitute misconduct. It was a disagreement, and he was agreeable with counsel in several other court proceedings after that date. This is, of course, a post-conviction act is a creature of statute. It's a constitutional mechanism. Is the standard going to be different here because of the fact that it's a statutory post-collateral attack on the judgment? The standard for waiver of counsel is the same whether it's a constitutional or statutory right to counsel. So, no, it's not a different standard. It still must be knowing and intelligent, and there still needs to be a warning whether it's a statutory right or a constitutional right. But not a 401. No, a 401 doesn't need to apply in post-conviction proceedings. All that really needs to be known in cases like this that involve misconduct are that you stand to lose the right to appointed counsel, and he was never told he could lose the right. I do also briefly just want to address the trial court's comments before the evidentiary hearing. At that point, the trial court had said that he had just represented himself on the motion to dismiss. Again, in the state's brief, they say that he was asked if he wanted to represent himself, and that wasn't a knowing waiver because she never told him you have the right to appointed counsel. She had only at that point said to him, you can either hire an attorney or you can represent yourself, and he didn't have funds for an attorney. So at this point, we would ask that you affirm the judgment of the appellate court and remand the case for further post-conviction proceedings. Thank you. Reply. It concedes that all you need to know, all the defendants need to know in this sort of situation, is does he lose the right to appointed counsel? I'm playing for the record here that he did from the get-go. In the first appearance with his attorney, the judge said, look, you've been arguing about getting a counsel, about getting a transcript. You have to get along. You have to get along. If you don't get along, you have to tell me that you're going to go first and that you cannot hire somebody. There definitely were tensions. I think the record reveals significantly more tension between petitioner and the appointed counsel than the lawyer is willing to find in the record. Certainly, Petitioner and Mr. Capolini, the public defender, they certainly argued pretty strongly at that first hearing. He came out to the judge and he said, I have to go pro se. Capolini said, no, judge, that's not what happened. I said, if he's going to tell me I'm wrong about the law and I don't know anything, then he should go pro se. If I'm going to be the lawyer, then I have to do it within the bounds of the law. It was that sort of argument. And they appeared one more time together, Mr. Capolini and the petitioner, and still there was tension about what was supposed to go on. And from the record, it seems less of an administrative decision than that Mr. Capolini probably was happy to pass along representation of Mr. Leslie to Mr. Commersico. It's not 100% clear what happened. So we agree that a judge should issue a warning. We just feel that the record absolutely supports the warning. This, I think, just is said in this case. And it doesn't have to be misconduct. I want to be clear. I know I tried to make this point earlier. But misconduct in the sense of a waiver by conduct is not physical misconduct. Physical misconduct typically comes in when you have this forfeiture situation where you're smashing your attorney in the face, hitting him with a glass, hitting him with a chair. Kind of misconduct of warranting a waiver by conduct doesn't have to be physical at all. It's a continued refusal to get along, going through two or three attorneys and just refusing to get along. And dilatory conduct, maybe that's the best way to describe it, is dilatory conduct but not physical conduct. That's the kind of misconduct that justifies a waiver by conduct. I can't reconcile Petitioner's recitation of the June 3rd, evidence of the June 3rd hearing with what I have in the record. It came in, this third hearing. Petitioner did say, oh, oh, Judge, Mr. Kramersik won't work with me. He won't work with me. And the judge said, wait. Okay, that's a different situation then. He doesn't want to work with you. We have to have a hearing on this. She said, those are two completely different things. So, Mr. Kramersik, let's hear from you what happened. Well, this is the third time I've tried to talk to him. He won't talk to me at all. He doesn't want me to do anything on the petition. He likes it how it is, even though I said we don't have strong legal issues here. And then Petitioner's getting his say. And the judge makes a finding of fact. She says, knowing you and how things have been going, I find that you won't listen to Mr. Kramersik. So, I absolutely disagree with my opponent. I think it is a finding of fact that the trial judge in this record, that this petitioner refused to get along with this appointment of counsel. And so, that finding of fact could be titled a deference. But I agree with my opponent, and it's a danger to review. Overall, whether there's a valid waiver, we need to know. That's a legal question. And finally, as for exact phrasing of the wording, there is no magic word. There's never a magic word. Perhaps the court could suggest a time and a place where the judge would say, Mr. Petitioner, you are at the point where I need to warn you that if you continue in this vein of conduct, you stand the right to lose your right to post-conviction counsel. Would it be better to be very explicit? Yes. But the laws never require magic words like that, even in a 401 context. Substantial compliance is always required. As long as you get the gist of the information across to the defendant. And that's why here the waiver was sufficient. If there are no further questions, we'd ask that this court reverse the judgment of the trial court. Thank you. Case number 122100, People v. Leslie, will be taken under advisement as agenda number one. Ms. Dorsch, Ms. Green, we thank you for your argument this morning. You are excused. The next case called...